UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DONALD L. HYATT, II, | * | CIVIL ACTION |
| MARSHALL A. HYATT, | * | |
| and JOHN D. HYATT, M.D., | * | NO. 2:13-cv-06328 |
| PLAINTIFFS | * | |
| | * | JUDGE MARTIN FELDMAN |
| VERSUS | * | |
| | * | MAG. JUDGE ROBY |
| LAVERN D. ROVIG, IFC HOLDINGS, | * | |
| INC., and JACKSON NATIONAL LIFE | * | |
| INSURANCE COMPANY, | * | |
| DEFENDANTS | * | |
| | * | |

\* \* \* \* \* \* \* \*

## MEMORANDUM IN SUPPORT OF 12(b)(6) MOTION TO DISMISS, OR ALTERNATIVELY, TO STAY AND COMPEL ARBITRATION

**MAY IT PLEASE THE COURT:**

Defendants, Lavern D. Rovig, IFC Holdings, Inc., and Jackson National Life Insurance Company (collectively, "Defendants") have requested an order from this Court dismissing Plaintiffs' suit under Federal Rule of Civil Procedure 12(b)(6), or, alternatively, staying Plaintiffs' suit and compelling Plaintiffs to proceed with their claims in arbitration.

## BACKGROUND

Defendant, Lavern "Joe" Rovig, is a registered representative of IFC Holdings, Inc., d/b/a INVEST Financial Corporation ("INVEST"), a financial services broker-dealer offering securities, related services, and insurance products. Mr. Rovig provided investment services for Donald A. Hyatt, father of Plaintiffs, for many years. In early 2002, Mr. Hyatt signed a new brokerage account application with INVEST. Above Mr. Hyatt's signature, the application reads:

> I REPRESENT THAT I HAVE READ THE TERMS AND CONDITIONS GOVERNING THIS ACCOUNT AND AGREE TO BE BOUND BY SUCH TERMS AND CONDITIONS AS CURRENTLY IN EFFECT AND AS MAY BE AMENDED FORM TIME TO TIME.  THIS ACCOUNT IS GOVERNED BY A PRE-DISPUTE ARBITRATION AGREEMENT WHICH APPEARS ON PAGE 3.   I ACKNOWLEDGE RECEIPT OF THE PRE-DISPUTE ARBITRATION AGREEMENT.[1]

Mr. Hyatt purchased an annuity with Prudential through INVEST on 5/28/2002 (the "Annuity"). At the time that he purchased the Annuity, Mr. Hyatt named his wife, Mary McWilliams, as the sole beneficiary of the Annuity's death benefit. Mr. Hyatt received regular quarterly statements from Prudential, each listing Ms. McWilliams as the designated beneficiary.

In or around January 2012, Mr. Hyatt advised Mr. Rovig that he was getting a divorce. Among other things, Mr. Rovig advised Mr. Hyatt that he needed to ensure that he made appropriate changes to his assets' beneficiary designations. Mr. Hyatt agreed and assured Mr. Rovig that as a retired attorney, he was familiar with the importance of making those changes and would do so. Mr. Rovig reminded Mr. Hyatt about the issue on multiple occasions; each time, Mr. Hyatt assured him that he had the issue in hand. In March 2012, Mr. Rovig specifically addressed the beneficiary designation on the Annuity with Mr. Hyatt. Mr. Hyatt told Mr. Rovig that he had it taken care of and did not need Mr. Rovig to "nag" him about it. Accordingly, Mr. Rovig understood that Mr. Hyatt would or had changed the beneficiary information on the Annuity as he saw fit. The topic was not addressed again, by either of them.

Prior to his divorce, Mr. Hyatt was diagnosed with liver cancer. He executed a durable power of attorney ("POA") in favor of his son, plaintiff, Donald "Luke" Hyatt II, in 2012. Accordingly, Luke Hyatt had access to not only his father who he could speak with about his investments, including the Annuity, but also access to all account documents related to the

---

[1] New Brokerage Account Application, attached as an exhibit to Plaintiffs' Complaint [R. Doc. 1-20].

Annuity, which included the beneficiary designation.  In late 2012, aware of the severity of Mr. Hyatt's illness, Mr. Rovig advised Luke Hyatt, *as POA for his father*, that he authorize the sale of two mutual funds in a separate account owned by Mr. Hyatt.[2]  The money from that sale would serve to fund Mr. Hyatt's care and eliminate a future probate problem.[3]  Luke Hyatt approved this course of action with Mr. Rovig, indicating that he had consulted with his father.[4]

Mr. Hyatt died on March 16, 2013.  Luke Hyatt notified Mr. Rovig of Mr. Hyatt's death via e-mail on March 18, 2013 and inquired about attaining the Annuity death benefit.[5]  Mr. Rovig replied indicating that he would begin the claims process.[6]  Upon contacting Prudential, Mr. Rovig learned for the first time that Mr. Hyatt had not changed his beneficiary designation as he had stated he would do.  On April 4, 2013, Mr. Rovig notified Luke Hyatt that Prudential had advised him that Mr. Hyatt's ex-wife, Ms. McWilliams, was the sole beneficiary on the Annuity and that Mr. Hyatt never contacted Prudential about changing the beneficiary.[7]

Luke Hyatt and his brothers have filed this suit, alleging that Luke Hyatt asked Mr. Rovig about the beneficiary status of the Annuity in January 2013, that Mr. Rovig indicated that Mr. Hyatt's three sons were equal beneficiaries, that he would let Luke Hyatt know if anything further needed to be done, and that Mr. Rovig never followed up.  The Plaintiffs assert negligence, negligent misrepresentation, and a claim under the Louisiana Unfair Trade Practices Act ("LUTPA").  The Plaintiffs allege that Jackson National is liable as the insurer of INVEST.

Even assuming Plaintiffs' allegations are true as required for purposes of a motion to dismiss (allegations which are denied by Defendants), Plaintiffs have still failed to state a claim

---

[2] *See* 11/15/12 E-mail, attached as an exhibit to Plaintiffs' Complaint [R. Doc. 1-3].
[3] *Id.*
[4] *See* 11/21/12 E-mail, attached as an exhibit to Plaintiffs' Complaint [R. Doc. 1-4].
[5] *See* 3/18/13 E-mail, attached as an exhibit to Plaintiffs' Complaint [R. Doc. 1-8].
[6] *See* 3/19/13 E-mail, attached as an exhibit to Plaintiffs' Complaint [R. Doc. 1-9].
[7] *See* 4/4/13 E-mail, attached as an exhibit to Plaintiffs' Complaint [R. Doc. 1-11].

against Defendants for negligence or negligent misrepresentation because Mr. Rovig and INVEST had no legal duty to the Plaintiffs, all suing in their individual capacities as alleged beneficiaries. If any duty existed, it was to Mr. Hyatt alone, not to his sons, and Mr. Rovig acted appropriately and did not breach any duty to Mr. Hyatt. Luke Hyatt and his brothers are explicitly bringing suit in their individual capacities, but have no basis under the law to do so.[8] Plaintiffs have also failed to state a claim under LUTPA because the Plaintiffs lack standing, and there are no allegations involving "trade or commerce."

Because the Plaintiffs have failed to state a claim upon which relief may be granted, all claims against all Defendants should be dismissed. Furthermore, Jackson National is an improper party to this action and should be dismissed. Plaintiffs' sole basis for bringing this action against Jackson National is the incorrect assertion that Jackson National is the liability insurer for INVEST and Mr. Rovig. Jackson National is an affiliated entity of INVEST. Jackson National has not provided insurance coverage to either INVEST or Mr. Rovig and should be dismissed from this case. Counsel for Plaintiffs was provided with the above information prior to the filing of this motion but has not dismissed Jackson National to date.

In the alternative, if Plaintiffs have a claim against Defendants INVEST and Mr. Rovig, the claim should be handled in arbitration, as any claim stems from Mr. Hyatt's contractual relationship with INVEST, and such contract contains an arbitration agreement.

## LEGAL ARGUMENT

### I. Plaintiffs Have Failed To State A Cause Of Action For Negligence Or Negligent Misrepresentation.

Plaintiffs cannot prevail on the duty element of their negligence claims. To prove both a negligence claim and a claim for negligent misrepresentation, Plaintiffs must establish the

---

[8] *See* Complaint [R. Doc. 1], at ¶61.

4

following common elements: (1) a duty is owed by Defendants INVEST and Mr. Rovig to the Plaintiffs; (2) INVEST and Mr. Rovig breached that duty; (3) the breach was the cause of injury to the Plaintiffs; and (4) the Plaintiffs were damaged. *Blanchard v. Lee*, 13-220 (E.D. La. Aug. 9, 2013); 2013 WL 4049003, at *4-5; *Cuevas v. City of New Orleans*, 1999-2542 (La. App. 4th Cir. 6/21/00); 769 So.2d 82, 85.

Whether a duty is owed is a question of law. *Cuevas*, 769 So. 2d at 85. Neither INVEST nor Mr. Rovig owed a duty to the Plaintiffs, who are strangers to the Annuity purchase made by Mr. Hyatt. To the extent INVEST and Mr. Rovig owed any duty, it was only to Mr. Hyatt at the time he purchased the Annuity. The nature of the duty owed by a broker to an investor varies depending on the particular relationship. *Romano v. Merrill Lynch, Pierce, Fenner & Smith*, 834 F.2d 523, 530 (5th Cir. 1987). However, there was no broker/investor relationship between INVEST or Mr. Rovig and any of the Plaintiffs in their individual capacities. Neither Mr. Rovig nor INVEST owed any duty to Plaintiffs, who sue here solely in their individual capacities as alleged unnamed beneficiaries on the Annuity. Their allegations do not give rise to any independent duty on the part of INVEST or Mr. Rovig to the Plaintiffs to ensure that they were the named beneficiaries of the Annuity. Even if Luke Hyatt attempted to sue on his father's behalf as administrator of his estate, which he has not here, such a claim would also fail as neither INVEST nor Mr. Rovig owed any duty to Mr. Hyatt related to his personal decision when and/or if to change his beneficiary designation on the Annuity. *Romano*, 834 F.2d at 530 ("We have already noted that Mr. Romano controlled his commodity account. His broker had no authority to make independent investment decisions, but instead acted solely at Romano's direction. Mr. Romano was an alert and vigilant businessman who daily received and assessed the silver futures market. Because of Mr. Romano's control over his nondiscretionary account

and his ability to make investment decisions, we find that defendants did not breach the fiduciary duty they owed.").

Moreover, it is disingenuous for Plaintiff Luke Hyatt to shift his own duty as POA for his father onto INVEST and Mr. Rovig. As POA, Luke Hyatt had access to Mr. Hyatt's personal financial records, including the quarterly Annuity statements, which clearly stated that Ms. McWilliams was the sole beneficiary of the Annuity. Luke Hyatt had only to glance at the quarterly statements, four of which were sent to Mr. Hyatt in Mandeville, where his sons were caring for him, during the time that Luke Hyatt was serving as POA.

INVEST and Mr. Rovig did not owe a duty to Plaintiffs let alone breach any purported duty. Further, the actions or inactions of INVEST and Mr. Rovig did not cause the Plaintiffs damage. This Court should dismiss these claims with prejudice.

## II. Plaintiffs Fail To State A Cause of Action Under LUTPA.

LUTPA declares as unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." LA. R.S. § 51:1405. First, the Plaintiffs' allegations are not subject to LUTPA because they do not involve "conduct of any trade or commerce." "Trade or commerce" is defined as:

> the advertising, offering for sale, sale, or distribution of any services and any property, corporeal or incorporeal, immovable or movable, and any other article, commodity, or thing of value wherever situated, and includes any trade or commerce directly or indirectly affecting the people of the state.

LA. R.S. 51:1402(9). The Plaintiffs allege that Mr. Rovig failed to ensure that they were the named beneficiaries of the Annuity. This alleged failure does not involve any of the activities defined as "trade or commerce." Mr. Hyatt had purchased the Annuity eleven years prior, and there are no allegations of any wrongdoing associated with that purchase.

Second, the Plaintiffs do not have standing to bring a LUTPA claim. The legislature enacted LUTPA to deter injury to competition. *Tessier v. Moffatt*, 93 F. Supp. 2d 729, 734 (E.D. La. 1998). Courts have interpreted LUTPA to provide a right of action for only "a very limited segment of potential claimants." *City of Alexandria v. Cleco Corp.*, 1:05-01121, 2010 WL 290506, at *11 (W.D. La. Jan. 22, 2010) (citing *Tessier,* 93 F.Supp.2d at 734). In order to have standing, Plaintiffs must be either consumers or business competitors. *Id.* It is clear that the Plaintiffs are not business competitors of either Mr. Rovig or INVEST. It is also clear that the Plaintiffs are not consumers in this situation. LUTPA defines "consumer" as "any person who uses, purchases, or leases goods or services." LA. R.S. § 51:1402(1). The Plaintiffs do not allege that they used, purchased, or leased any goods or services from Mr. Rovig, INVEST, or any one else. Mr. Hyatt is the only consumer, and not only do Plaintiffs expressly state that they are not bringing a claim on his behalf, they could not do so under LUTPA. LA. R.S. § 51:1409(A) (litigants cannot bring a private right of action in a representative capacity for actual damages).

Section 51:1408 provides further support for the Plaintiffs' lack of standing:

> The court may issue such additional orders or render judgments against any party, as may be necessary to compensate any aggrieved person for any property, movable or immovable, corporeal or incorporeal, *which may have been acquired from such person* by means of any method, act, or practice declared unlawful by R.S. 51:1405.[9]

(emphasis added). No one acquired any property from the Plaintiffs. Even taking all their allegations as true, the Annuity death benefit never belonged to the Plaintiffs and, therefore, could not have been taken from them.

---

[9] Although Section 51:1408 uses the phrase "any aggrieved person," the Fifth Circuit has interpreted the statute narrowly, limiting relief to individual consumers or business competitors. *Lambert v. Bd. of Comm'rs of Orleans Levee Dist.*, No. 05-5931, 2009 WL 152668, at *7 (E.D. La. Jan. 22, 2009).

The Plaintiffs have failed to state a claim under LUTPA both because they lack standing to bring such a claim and because the actions and inactions of which Defendants are accused do not involve "trade or commerce."  Accordingly, this Court should dismiss this claim with prejudice.

### III. Jackson National Should Be Dismissed In Any Event Because It Is Not INVEST's Insurer.

Plaintiffs allege that Jackson National provided a general liability insurance policy to INVEST.[10]  Jackson National is neither INVEST's nor Mr. Rovig's insurer.[11]  In a recent conversation, Luke Hyatt informed undersigned counsel that he thought Jackson National was the insurer because a lawyer from Jackson National had contacted him after he filed suit.  Jackson National is an affiliated entity of INVEST, not an insurer.  Undersigned counsel informed Luke Hyatt that Jackson National did not issue insurance for either INVEST or Mr. Rovig.  Plaintiffs have not dismissed Jackson National to date, necessitating Jackson National's response.  Because Jackson National is not INVEST's or Mr. Rovig's insurer, the Plaintiffs have failed to state a cause of action against it, and all claims against Jackson National should be dismissed with prejudice.

### IV. In The Alternative, These Proceedings Should Be Stayed Pending Arbitration.

When Mr. Hyatt contracted with INVEST, he agreed that any disputes that may arise would be determined by arbitration.  The Federal Arbitration Act (the "FAA") provides that arbitration clauses "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The purpose of the FAA is

---

[10] *See* Complaint [R. Doc. 1], at ¶6.
[11] *See* Affidavit of Scott Forbush, attached as Exhibit "1."

8

to "reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). As mandated by the FAA, the U.S. Supreme Court has repeatedly held that arbitration agreements are to be read liberally to affect their purpose, *Moses H. Cone v. Mercury Construction Co.*, 460 U.S. 1, 23 (1983); *see also Green Tree Fin. Corp.- Ala. v. Randolph*, 531 U.S. 79, 91 (2000), and "ambiguities as to the scope of the arbitration clause [must be] resolved in favor of arbitration," *Mastrobuono v. Shearson Lehman Hutton*, 514 U.S. 52, 62 (1995).

The stay of court proceedings is governed by Section 3 of the Federal Arbitration Act (the "FAA"):

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, ***shall*** on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added).[12] Section 3 of the FAA is mandatory, and "leaves no place for the exercise of discretion by a district court, but instead, mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original); *Flatland Real Estate Co. v. Dugas Construction, Inc.*, 00-1794, p. 5 (La. App. 3 Cir. 5/9/01), 784 So. 2d 867, 871.

---

[12] Further, Section 4 of the FAA provides that a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement," may move "for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Upon a determination that the parties are bound to arbitrate, the court is required to "make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.*

Thus, under Section 3 of the FAA, if the claims asserted in the lawsuit fall within the scope of an enforceable arbitration clause, the court before which the case is pending has no choice but to stay the lawsuit in favor of arbitration.[13]

Although the Plaintiffs are not signatories to the arbitration agreement with INVEST, the Fifth Circuit has held that non-signatories to an arbitration agreement may be bound to arbitrate under a third-party beneficiary theory. *Evans v. TIN, Inc.*, 11-2067, 2012 WL 2343162, at *4 (E.D. La. June 20, 2012). Plaintiffs go to great lengths in the Complaint to attempt to avoid arbitration through creative pleading, declaring that they are suing solely in their individual capacities and disclaiming any and all contract claims. Artful pleading cannot avoid mandatory arbitration. *Rosbottom v. GTECH Corp.*, 08-CV-0522, 2008 WL 4762779, at *4 (W.D. La. Oct. 28, 2008). There is no doubt that Plaintiffs' alleged claims against INVEST and Mr. Rovig arise out of Mr. Hyatt's contractual relationship with INVEST. Although those claims fail under the law as discussed in Section I above, to the extent this Court deems Plaintiffs' claims should proceed in any respect, they should proceed in arbitration. The only connection between Plaintiffs and Defendants INVEST and Mr. Rovig is through Mr. Hyatt's contractual relationship with INVEST. Accordingly, this Court should enter an Order staying these proceedings pending final and binding arbitration.

---

[13] Notably, a party resisting arbitration bears the burden of proving that the arbitration provision is invalid or does not encompass the claims at issue. *See Green Tree*, 531 U.S. at 92. Moreover, "an order to arbitrate [a] particular grievance should not be denied unless it may be said with *positive assurance* that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Daisy Mfg. Co. v. NCR Corp.*, 29 F.3d 389, 395 (8th Cir. 1994) (emphasis added) (quoting *AT&T Technologies v. Communications Workers of America*, 475 U.S. 643, 650 (1986)). Indeed, "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24-25; *see also Cajun Elec. Power Co-op., Inc.*, 324 So. 2d at 478.

Respectfully submitted,

**BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, PC**

BY:        *s/ Sarah K. Casey*
           KENT A. LAMBERT, T.A. (22458)
           SARAH K. CASEY (32385)
           201 St. Charles Avenue, Suite 3600
           New Orleans, Louisiana 70170
           Telephone: (504) 566-5200
           Facsimile: (504) 636-4000

**ATTORNEYS FOR DEFENDANTS,
LAVERN D. ROVIG, IFC HOLDINGS, INC.,
and JACKSON NATIONAL LIFE INSURANCE
COMPANY**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on January 30, 2014, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants. I further certify that there are no non-CM/ECF participants:

                             *s/ Sarah K. Casey*