UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DONALD L. HYATT, II, <br> MARSHALL A. HYATT, <br> and JOHN D. HYATT, M.D., <br> PLAINTIFFS <br> <br> VERSUS <br> <br> LAVERN D. ROVIG, IFC HOLDINGS, <br> INC., and JACKSON NATIONAL LIFE <br> INSURANCE COMPANY, <br> DEFENDANTS | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * | CIVIL ACTION <br> <br> NO. 2:13-cv-06328 <br> <br> JUDGE MARTIN FELDMAN <br> <br> MAG. JUDGE ROBY |

\* \* \* \* \* \* \* \*

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' 12(b)(6) MOTION TO DISMISS, OR ALTERNATIVELY, TO STAY AND COMPEL ARBITRATION**

**MAY IT PLEASE THE COURT:**

Defendants, Lavern D. Rovig and IFC Holdings, Inc. ("INVEST") (collectively, "Defendants"), submit this reply memorandum in support of their 12(b)(6) Motion to Dismiss, or, Alternatively, to Stay and Compel Arbitration.[1]

**I. Negligence**

    **A. Neither Mr. Rovig nor INVEST assumed a duty to Plaintiffs.**

Regarding a negligence claim, "the initial inquiry is whether, as a matter of law, a duty is owed to this particular plaintiff to protect him from this particular harm." *Barrie v. V.P. Exterminators, Inc.*, 625 So. 2d 1007, 1016 (La. 1993). As explained in the Memorandum in

---

[1] In Plaintiffs' Memorandum in Opposition, they confirm they intend to dismiss Jackson National from this case. [R. Doc. 15, at p. 2]. Jackson National respectfully requests the Court dismiss it as a named Defendant from this case with prejudice.

Support of 12(b)(6) Motion to Dismiss [R. Doc. 11-1], Defendants maintain that Mr. Rovig had no duty to Plaintiffs in their individual capacities. Mr. Rovig's only duty, to the extent it existed, was to Plaintiffs' father, Donald Hyatt ("Mr. Hyatt"), and that duty concluded after the purchase of the Annuity as neither Mr. Rovig nor INVEST had any discretion regarding any aspect of the annuity, including the beneficiary designations at issue here. [R. Doc. 11-1, at p. 5].

In their Opposition, Plaintiffs claim that Mr. Rovig assumed an alleged duty of providing correct information to Plaintiffs regarding their father's annuity because he voluntarily provided information to them. [R. Doc. 15, at p. 6]. In other words, even though Plaintiffs had direct access to their father and even the power of attorney to act on his behalf, they want to blame Mr. Rovig for Mr. Hyatt's failure to change the beneficiary designation - even though Mr. Rovig was never instructed to do so nor had the power to do so without instruction from Mr. Hyatt. Plaintiffs' arguments fail under the law and facts.

*Devore v. Hobart Mfg. Co.*, 367 So. 2d 836 (La. 1979) is the seminal Louisiana state court case on negligent misrepresentation. In that case, the defendants had supplied the plaintiff with the incorrect name of the manufacturer of the steamer that had allegedly caused plaintiff's injury, and the plaintiff relied on the representation in filing suit. Because the plaintiff failed to sue the correct party, her claim against the manufacturer prescribed. The Louisiana Supreme Court found the plaintiff failed to state a cause of action against the defendants in part because the plaintiff did not allege that the information sought was within the defendants' exclusive knowledge or control. *Id.* at 839. Similarly, the identity of the named beneficiary of the Annuity was clearly within the control of Plaintiffs who had direct access to their father and direct right to the beneficiary information as Plaintiff Donald "Luke" Hyatt was POA for their father.

Plaintiffs' cite to numerous cases, all of which are distinguishable from this case and do not support their arguments. For example, *Trust Co. of Louisiana v. N.N.P. Inc.*, 104 F.3d 1478, 1487 (5th Cir. 1997) addresses only the assumption of duty by an attorney to a non-client:

> In order for an attorney to have a legal duty to supply correct information so that he is liable to a non-client for malpractice, the plaintiff must show that the attorney provided legal services and that the attorney knew that the third party intended to rely upon those legal services.

Further, even if an analogy can be drawn to Mr. Rovig and Plaintiffs, Mr. Rovig did not provide any services to Plaintiffs. Indeed, Plaintiffs do not allege that Mr. Rovig ever communicated with Plaintiffs Marshall or John Hyatt, and Mr. Rovig's only communications with Luke Hyatt was in his capacity as POA for his father. Mr. Rovig never provided advice to Plaintiffs in their individual capacities prior to Mr. Hyatt's death.

In *Cypress Oilfield Contractors, Inc. v. McGoldrick Oil Co., Inc.*, 525 So. 2d 1157, 1162 (La. App. 3 Cir. 1988), the court found that a bank, as assignee of a construction company's accounts receivable, was partially liable for negligent misrepresentation when it informed the company's debtor that the company was financially stable when it was actually insolvent. Even if Plaintiffs' allegations are taken as true, and Mr. Rovig had a conversation with Luke Hyatt regarding the Annuity's beneficiary, Plaintiffs' own allegations indicate that Luke Hyatt contacted Mr. Rovig only in his POA capacity, not in his individual capacity.[2]

---

[2] Plaintiffs allege the following in their Complaint:
> As Donald A. Hyatt's condition began to deteriorate in hospice he turned over more control over his financial affairs and Donald L. Hyatt, II to check on certain matters. Among the matters Donald L. Hyatt checked on was whether there was a death benefit with the annuity, and if so had what he considered the proper beneficiary selection been made.
> [. . .]
> Mr. Rovig called Donald L. Hyatt, II back at approximately 10:24 a.m., and a 20 minute telephone conversations followed. During the conversation, Donald L. Hyatt, II related *his father's concern* that Dr. Mary E. McWilliams not receive any of the funds available upon his death.

[R. Doc. 1, at ¶¶[19-20] (emphasis added). It is clear from Plaintiffs' allegations that Luke Hyatt called Mr. Rovig on

*Pastor v. Lafayette Bldg. Ass'n*, 567 So. 2d 793, 796 (La. App. 3 Cir. 1990) is distinguishable on the same grounds as that court cited to *Cypress Oilfield* in finding a first mortgagee liable for misrepresentation to a second mortgagee. Lastly, *Payne v. O'Quinn,* 565 So. 2d 1049, 1054 (La. Ct. App. 1990) and *Barrie v. V.P. Exterminators, Inc.*, 625 So. 2d 1007, 1008 (La. 1993) are distinguishable because they both deal exclusively with a termite inspector's duty to the purchaser of a house.

Plaintiffs cite two cases in support of their argument that an assumed duty can extend specifically to prospective beneficiaries. In *In re Succession of McKnight*, 33,802 (La. App. 2 Cir. 10/4/00), 768 So. 2d 794, 798, the decedent opened a money market deposit account with the defendant bank designated "Joint-With Survivorship," and listed the plaintiff as a signatory and the beneficiary. *Id.* at 796. The signature card furnished by the bank indicated that in the event of one tenant's death, the balance in the account would pass directly to the surviving tenant, instead of to the estate. *Id.* at 798. However, the signature card did not constitute a valid trust under Louisiana law because the plaintiff was not within the required degree of kinship. *Id.* The court found that the defendant bank had breached its duty when it failed to correctly instruct the decedent in accomplishing the intended distribution to the plaintiff. *Id.* Unlike the plaintiff in *McKnight*, Plaintiffs were not named beneficiaries to the Annuity; instead, they are claiming that they should have been so named, an act that could have been successfully completed only by Mr. Hyatt or Luke Hyatt as POA before Mr. Hyatt's death.

---

behalf of his father, not on his own behalf.

    The court also focused specifically on the defendant's status as a bank: "To allow a financial institution to make such a misrepresentation and not hold it responsible for the resulting harm would be to ignore basic principles of law contained in our civil code." 525 So. 2d at 1162.

Plaintiffs also cite an Iowa Supreme Court case, *Pitts v. Farm Bureau Life Ins. Co.*, 818 N.W.2d 91, 94 (Iowa 2012), in which the court addressed specifically whether a life insurance agent owes a duty of care to the intended beneficiary of a life insurance policy. Defendants assert that this case's holding is limited to its specific facts and the specific relationship between the plaintiff and defendant, as well as lacking any precedential value under Louisiana law. The factual scenario in *Pitts* is more akin to hypothetical allegations not made here that Mr. Hyatt had instructed Prudential to change the Annuity's named beneficiary, Prudential had informed Mr. Hyatt and his sons that the change had been made, and it was discovered at his death that the change was not made.

Plaintiffs have cited no case in which the court has found a duty by an investment broker to an allegedly intended beneficiary, or, for that matter, a case in which the defendant was found to have a duty to a plaintiff who had equal or better access to the information allegedly sought. The case at bar is more akin to *Devore, supra*, in which the Louisiana Supreme Court declined to find a duty on the part of the defendant to provide correct information.

### B. Notwithstanding the above, Plaintiffs allege only one misrepresentation.

Plaintiffs have alleged that Mr. Rovig breached his duty to Plaintiffs by communicating: (1) inaccurate information as to the Plaintiffs' beneficiary status; and, (2) incorrect information that it would be better for Plaintiffs from a probate standpoint to deplete the funds from their mother's succession first. [R. Doc. 15, at p. 7]. However, Mr. Rovig's statement concerning Plaintiffs' mother's funds was *not* incorrect. In their Complaint, Plaintiffs cite to a November 15, 2012 e-mail in which Mr. Rovig informs Plaintiffs in pertinent part:

> To preclude a lengthy probate process on this account as there are NO beneficiary(s) recorded, your late mother is the owner (Estate) and your Dad is the

5

"executor" on the account, I am going to recommend that we take the following
action soonest in anticipation of things to come.

[R. Doc. 1-3]. Mr. Rovig goes on to recommend the sale of the two mutual funds in the account. Plaintiffs fail to allege that Mr. Rovig's statements were in any way inaccurate. They have not alleged that there was, in fact, a recorded beneficiary, that the sale of the mutual funds did not preclude a lengthy probate process, or any other falsity. They allege only that if they had not sold the mutual funds, they would have inherited them at Mr. Hyatt's death. Mr. Rovig did not misrepresent this fact to Plaintiffs, and Luke Hyatt was aware of that consequence when he made the decision to sell the mutual funds to use for his father's care. Most importantly, Mr. Rovig's advice to Luke Hyatt regarding the sale of the mutual funds came three months *before* Luke Hyatt allegedly asked Mr. Rovig about the beneficiary status of the Annuity. [R. Doc. 1, at ¶20]. Even if Mr. Rovig had a duty to Plaintiffs, which is denied, Plaintiffs fail to allege any breach of that duty as to Mr. Rovig's advice to sell the mutual funds.

### C. Plaintiffs' negligence claim also fails.

Plaintiffs' negligence claim fails for the same reasons as their negligent misrepresentation claim. Defendants did not have a duty to Plaintiffs; they did not breach that duty; and any alleged breach was not the cause of Plaintiffs' damage. Plaintiffs attempt to make two distinct claims, drawing a distinction between Defendants' alleged negligent misrepresentation and Defendants' alleged negligent failure to correct the misrepresentation. [R. Doc. 15, at p. 11-12] This is, in fact, one claim, and fails for the reasons above.

In addition, Plaintiffs claim that they were damaged by Mr. Rovig's failure to correct his alleged misrepresentation through, not only the loss of the Annuity's death benefit, but also the loss of the residue of their mother's estate. [R. Doc. 15, at p. 12]. Plaintiffs cannot claim this second element of damage on the facts alleged for the reasons explained in Part II above. The

mutual funds were sold to avoid a probate problem *before* the alleged conversation in January 2013, between Luke Hyatt and Mr. Rovig in which Mr. Rovig made the alleged misrepresentation regarding Plaintiffs' beneficiary status. Plaintiffs cannot allege that Luke Hyatt would have made a different decision regarding the mutual funds if he had known the correct beneficiary information because at the time that Mr. Rovig allegedly gave the incorrect beneficiary information, the mutual funds had already been sold.

## II. Louisiana Unfair Trade Practice Act ("LUTPA")

### A. *Cheramie* is not binding precedent.

Plaintiffs argue that the Louisiana Supreme Court's opinion in *Cheramie Services, Inc. v. Shell Deepwater Production, Inc.*, 2009-1633 (La. 4/23/2010); 35 So. 3d 1053 has expanded standing under LUTPA beyond consumers and business competitors. *Cheramie*, however, is a plurality opinion and, therefore, not precedential authority on the LUTPA standing issue.[3] Plaintiffs are correct that this Court has noted and applied the ruling in *Cheramie* in *Inflatable Zoo, Inc. v. About to Bounce, L.L.C.*, No. 10-1483, 2013 WL 1558264, at *4 (E.D. La. 4/11/13).[4]

---

[3] The ruling on LUTPA standing was endorsed by only three Justices. Justice Knoll concurred in the result only, thus "disagreeing with some language or rationale of the opinion." *See State v. Barnard*, 287 So. 2d 770, 774 (La. 1974). Justice Johnson agreed with the result, but wrote a concurrence, asserting her belief that standing under LUTPA is indeed restricted to consumers and business competitors. *Cheramie Servs.*, 35 So.3d at 1064 (Johnson, J., concurring). Justice Guidry also concurred in the result, but wrote separately to note that because all agreed that the plaintiff had made no showing of any "unfair" act or practice, the discussion of LUTPA standing was dicta. *Id.* at 1065 (Guidry, J., concurring). Finally, Chief Justice Kimball did not participate in the deliberation of the opinion. *See id.* at 1054 n.1.

As a 3/3/1 plurality opinion, *Cheramie* is not precedent beyond the specific facts of the case. *See*, e.g., *Barnard*, 287 So.2d at 774 ("The opinion…is not controlling, since it was not agreed to by a majority of this court. Three Justices dissented, and a fourth concurred, meaning he did not agree with all the language or rationale of the opinion."); *Chaney v. Travelers Ins. Co.*, 249 So.2d 181, 184 (La. 1971); *Warren v. LAMMICO*, 21 So.3d 186, 210 (La. 2008) (on rehearing) (Knoll, J., concurring) ("…I disagree with the majority's reliance upon [a] plurality opinion…which has no precedential authority…"); *Citizen Committee for Better Law Enforcement v. City of Lafayette*, 685 So.2d 289, 293 (La. App. 3d Cir. 1996) ("the holding of the plurality opinion is of little value as precedent and should properly be limited to the facts of that case only.").

[4] This Court made a similar application of *Cheramie* in *Administrators of the Tulane Educ. Fund v. Biomeasure, Inc.*, No. 08-5096, 2011 WL 3268108, at *6 (E.D. La. July 28, 2011).

7

However, the Fifth Circuit has not yet addressed the issue, and the district courts have not uniformly applied *Cheramie*.

In the April 16, 2011 Order and Reasons, Judge Fallon dismissed the plaintiffs' LUTPA claims in *Doctor's Hospital of Slidell v. United Healthcare Insurance Co.*, No. 10-3862, holding that because *Cheramie* was not a majority holding by the Supreme Court, the Fifth Circuit's previous interpretation of LUTPA remained binding.[5] More recently, the Western District of Louisiana's Judge Hicks issued a March 19, 2012 Memorandum Ruling in *Baba Lodging, LLC v. Wyndham Worldwide Operations, Inc. et al.*, No. 10-1750, in which he found *Cheramie* to be non-binding precedent and continued to follow the Fifth Circuit's limitation of standing only to consumers and business competitors.[6] Most recently, the Middle District of Louisiana, although not specifically addressing the standing issue, stated that the private cause of action under LUTPA is limited to consumers and business competitors. *Duperon Corp. v. Screening Sys. Int'l, Inc.*, No. 12-296, 2013 WL 177418 (M.D. La. Jan. 16, 2013) (citing *Gardes Directional Drilling v. U.S. Turnkey Exploration Co.,* 98 F.3d 860, 868 (5th Cir.1996)).

Although some courts have treated it as such, *Cheramie* is not binding precedent because it is a plurality opinion, and the Fifth Circuit has not overruled or vacated its long-time holding that standing under LUTPA is limited to consumers and business competitors.

### B. Plaintiffs are not consumers.

Plaintiffs contend that they meet the definition of consumer under LUTPA because Mr. Rovig offered them advice concerning the order of Mr. Hyatt's asset liquidation. [R. Doc. 15, at pp. 14-15]. This argument has no merit. LUTPA defines "consumer" as "any person who uses, purchases, or leases goods or services." LA. R.S. § 51:1402(1). Plaintiffs do not allege that

---

[5] *See* Order and Reasons, attached as Exhibit "1."
[6] *See* Memorandum Ruling, attached as Exhibit "2," at pp. 6-7

8

they used, purchased, or leased any goods or services from Mr. Rovig, INVEST, or anyone else. And, to the extent that Plaintiffs may be arguing that Luke Hyatt became a consumer when he "used" Mr. Rovig's advice, it is denied that Luke Hyatt "used" the advice in his individual capacity; he was instead acting as POA for the decedent, Mr. Hyatt, and had no power to act otherwise.

### C. Plaintiffs do not allege "trade or commerce."

LUTPA declares as unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." LA. R.S. § 51:1405. "Trade or commerce" is defined as:

> the advertising, offering for sale, sale, or distribution of any services and any property, corporeal or incorporeal, immovable or movable, and any other article, commodity, or thing of value wherever situated, and includes any trade or commerce directly or indirectly affecting the people of the state.

LA. R.S. 51:1402(9).

Plaintiffs argue that Mr. Rovig provided services in the form of advice, alleging three distinct occasions: (1) Mr. Rovig's advice on the sale of the mutual funds; (2) Mr. Rovig's alleged statement concerning Plaintiffs' beneficiary status; and (3) Mr. Rovig's alleged offer of assistance in handling investments for Plaintiffs. [R. Doc. 15, at p. 15]. As has already been discussed, the first two pieces of advice, to the extent they existed, were given to Luke Hyatt as POA for Mr. Hyatt, not in Luke Hyatt's individual capacity. Mr. Rovig advised Luke Hyatt to consider selling the mutual funds so that the money could be used to cover Mr. Hyatt's expenses and to avoid potential probate issues [R. Doc. 1-3]. Plaintiffs allege that Luke Hyatt spoke to Mr. Rovig and informed him of "his father's concern that Dr. Mary E. McWilliams not receive any of the funds available upon his death." [R. Doc. 1, at ¶20]. It was in response to this information that Mr. Rovig allegedly informed Luke Hyatt that Plaintiffs were beneficiaries

9

under the Annuity. It is clear that Luke Hyatt was speaking to Mr. Rovig as POA for his father as it was his father's concern that was allegedly communicated to Mr. Rovig. Plaintiffs' third alleged offering of advice is based entirely on an email from Mr. Rovig stating:

> For now, you boys will have to decide how you wish to take the benefit. You may have cash, transfer your respective shares to a similar product - variable annuity - or another investment "type" vehicle. We will be available to discuss any of the options that may be considered.

[R. Doc. 1-9]. To the extent this is even advice, which is denied as Mr. Rovig is merely stating Plaintiffs' options, it did not occur until after the death of Mr. Hyatt, when the Annuity's death benefit had already vested in Ms. McWilliams; therefore, this communication could not have led to any loss by Plaintiffs.

### III. Arbitration

A non-signatory to an arbitration agreement is nevertheless required to arbitrate his claims if he is a third-party beneficiary to the contract containing the arbitration agreement or otherwise receives a direct benefit. *See Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 356 (5th Cir. 2003) ("The Fifth Circuit has recognized six theories for binding a non-signatory to an arbitration agreement: (1) incorporation by reference, (2) assumption; (3) agency; (4) veil-piercing/alter ego; (5) estoppel; and (6) third-party beneficiary."); *Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 517 (5th Cir. 2006).[7] In their Complaint, Plaintiffs argue that they are the intended beneficiaries of the Annuity. Plaintiffs base their claims against Defendants on two alleged communications with Mr. Rovig, both of which were conducted between Mr. Rovig and Luke Hyatt as POA for Mr. Hyatt, not in his individual capacity. These

---

[7] Defendants maintain that the Federal Arbitration Act ("FFA") applies, but the conclusion would be the same under the Louisiana Arbitration Law, as it is virtually identical to the FAA, and Louisiana courts look to federal law in interpreting it. *Lakeland v. CIGNA*, 2001-1059 (La. App. 4 Cir. 2/6/02); 812 So. 2d 695, 698.

alleged communications took place due to the contract between INVEST and Mr. Hyatt, the contract through which Mr. Hyatt purchased the Annuity. The funds that Plaintiffs seek in this suit - the Annuity death benefit - came into existence as a result of the contract between Mr. Hyatt and INVEST.

When Mr. Hyatt contracted with INVEST to purchase the Annuity, he agreed that any disputes that may arise would be determined by arbitration. [R. Doc. 12-1]. Plaintiffs recognize that if they were to bring the same claims against Defendants on behalf of their father's estate instead of in their individual capacities, those claims would be subject to arbitration. [R. Doc. 15, at p. 21 and R. Doc. 1, at ¶63]. It would be an illogical conclusion if the *same* claims brought in their individual capacities seeking the *same* funds should not be subject to arbitration. Furthermore, Plaintiffs wish to extend to themselves in their individual capacities any duty owed to their father, a duty that arises only through the contract between Mr. Hyatt and INVEST. Plaintiffs have embraced the contract for this limited purpose, but attempt to repudiate the arbitration agreement in that contract. *See Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 517-18 (5th Cir. 2006). If Plaintiffs seek the benefit of the contract, they must also accept all aspects of that relationship, including the arbitration clause. *Id.*

Defendants maintain that Plaintiffs have failed to state a cause of action against Defendants for the reasons already explained. However, to the extent the court finds that Plaintiffs have stated a claim, that claim arises directly from Mr. Rovig's alleged communications with Mr. Hyatt's POA, communications resulting from the contract between INVEST and Mr. Hyatt. These claims should be arbitrated just as claims brought on behalf of Mr. Hyatt's Succession would be arbitrated.

Respectfully submitted,

**BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, PC**

BY:     *s/ Sarah K. Casey*
        KENT A. LAMBERT, T.A. (22458)
        SARAH K. CASEY (32385)
        201 St. Charles Avenue, Suite 3600
        New Orleans, Louisiana 70170
        Telephone: (504) 566-5200
        Facsimile: (504) 636-4000

**ATTORNEYS FOR DEFENDANTS,
LAVERN D. ROVIG, IFC HOLDINGS, INC.,
and JACKSON NATIONAL LIFE INSURANCE
COMPANY**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on February 25th, 2014, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants. I further certify that there are no non-CM/ECF participants:

        *s/ Sarah K. Casey*